UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
RODNEY VAN DUNK,

                                        Plaintiff,                      07 Civ. 7087 (RPP)

                    - against -                            **OPINION AND ORDER**

PETER BROWER, individually and as an officer of the Town
of Ramapo; TOWN OF RAMAPO, a New York municipal
corporation; JOHN DOE #1, individually and as an officer of
the Town of Ramapo; JOHN DOE #2, individually and as an
officer of the Town of Ramapo; f/n/u PASCOCELLO,
individually and as an officer of the Town of Ramapo;
ADVANCED FIGHTING SYSTEMS, a New Jersey
Corporation; and PHIL DUNLAP,

                                        Defendants.

-------------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Plaintiff Rodney Van Dunk initiated this action on August 9, 2007 by filing an eight-

count complaint.  On October 26, 2007, Defendants Town of Ramapo, John Doe #1, John Doe

#2, John Doe #3, Pascocello, and Peter Brower filed a motion to dismiss Counts I, II, III, VI, VII,

and VIII of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In

support of the motion to dismiss Count VI was an affidavit of Janice Gittelman, Esq., which

referenced various exhibits including an affidavit of P.O. Pascocello, a police report and

certificate of conviction of Plaintiff for a prior incident, and Section 402 of New York Vehicle

and Traffic Law.  This Court converts the motion to dismiss Count VI into a motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56.[1]  Also on October 26, 2007,

---

[1] Defendant Pascocello's Motion to Dismiss Count VI under Federal Rule of Civil Procedure 12(b)(6) is
converted to a motion for summary judgment under Federal Rule of Civil Procedure 56.  Defendant Pascocello and
the Plaintiff have submitted affidavits with regard to the incident at issue in Count VI and these affidavits are
sufficient extrinsic submissions to warrant a conversion of the motion to dismiss to a summary judgment motion.  A

Defendants Advanced Fighting Systems and Phil Dunlap filed a motion to dismiss Counts I, II, III, IV, and V of the complaint.  On November 11, 2007, Plaintiff filed leave to amend his complaint, which was granted by consent at a conference before Judge Charles L. Brieant on December 7, 2007 (the "Second Amended Complaint").  Plaintiff filed opposition papers to the Defendants' motions to dismiss on November 16, 2007.  Included in those opposition papers was an affidavit of Plaintiff.  On January 4, 2008, during oral arguments before Judge Charles L. Brieant, the Parties agreed that Plaintiff would withdraw and discontinue, without prejudice, Counts I and II of the Second Amended Complaint.[2]

For the reasons that follow, Defendants' motions to dismiss are granted in part and denied in part.  Defendant Pascocello's motion for summary judgment on Count VI is granted in its entirety.

## BACKGROUND

### I.   The Parties

Plaintiff Rodney Van Dunk ("Plaintiff") is a resident of the Village of Hillburn, located in the town of Ramapo, and a citizen of the State of New York.  (Sec. Am. Compl. ¶ 1.)  Defendant Phil Dunlap ("Dunlap") is a resident of the Township of Mahwah and a citizen of the State of New Jersey.  (Id. ¶ 5.)  Defendants John Doe #1, John Doe #2, and John Doe #3  ("John Doe Officers") are employees of the Town of Ramapo Police Department ("Police Department")

---

district court may convert a motion to dismiss into one for summary judgment, so long as "[a]ll parties . . . [are] given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d). Though this ordinarily means that a district court "must give notice to the parties before converting a motion to dismiss . . . into one for summary judgment and considering matters outside the pleading," Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (citing Kopec v. Couglin, 922 F.2d 152, 154-55 (2d Cir. 1991)), such notice need not be explicitly supplied.  See Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008) (finding that parties had "reasonable opportunity to present all material relevant to a motion for summary judgment when both parties [had] filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss'") (citing In re G. & A. Books, 770 F.2d 288, 295 (2d Cir. 1985)).

[2] On August 5, 2008, this case was reassigned to Judge Cathy Seibel.  On December 3, 2008, this case was reassigned to this Court.

and are all residents of the State of New York.  (<u>Id.</u> ¶ 3.)  Defendant Advanced Fighting Systems ("AFS") is a New Jersey corporation with its principal place of business in Township of Mahwah in the State of New Jersey.  (<u>Id.</u> ¶¶ 4, 8.)  Dunlap is the principal in, and managing officer of, AFS.  (<u>Id.</u> ¶ 8.)  Plaintiff had enrolled at AFS to receive training in martial arts fighting.  (<u>Id.</u> ¶ 10.)  Defendants Edward Pascocello ("Officer Pascocello") and Peter Brower ("Police Chief Brower") are both employees of the Town of Ramapo Police Department and are residents of the State of New York.  (<u>Id.</u> ¶ 3.)  Prior to mid-2006, Brower was a captain in the Police Department and, in 2006, was promoted to Chief of the Police Department.  (<u>Id.</u> ¶ 24.)  Defendant Town of Ramapo ("Town of Ramapo" or "Ramapo") is a municipal corporation located in Rockland County, New York.  (<u>Id.</u> ¶ 2.)

## II.  Factual Allegations for the Purposes of the Motion to Dismiss Counts III, IV, V, VII and VIII

The following facts are drawn from the allegations in Plaintiffs' Second Amended Complaint and assumed to be true for the purposes of this motion to dismiss.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972); <u>Oteze Fowlkes v. Adamec</u>, 432 F.3d 90, 95 (2d Cir. 2005).

### a.  Concerning Defendants AFS, Dunlap, and John Doe Officers

Plaintiff enrolled at AFS to receive training in martial arts.  (Sec. Am. Compl. ¶ 10.)  In doing so, Plaintiff entered into a contract and/or contractual relationship with AFS, one that had explicit and implicit terms.  (<u>Id.</u>)  Several Ramapo police officers are also enrolled at AFS.  (<u>Id.</u>)  AFS advertises its services on the internet and, since its principal place of business is located approximately one mile from the New York state line, the corporation draws its clientele from a market area that encompasses portions of both New York and New Jersey.  (<u>Id.</u> ¶¶ 8, 9)  Plaintiff alleges that AFS is a place of public accommodation within the meaning of the Civil Rights Act of 1964.  (<u>Id.</u> ¶ 8.)

Plaintiff is a member of the Hillburn community, which is a village in Ramapo, New York, adjacent to the Stag Hill community in Mahwah, New Jersey.  (Id. ¶ 14.)  The Hillburn and Stag Hill communities primarily consist of members of the Ramapough Lenape Nation, a Native American tribe recognized by the States of New York and New Jersey.  (Id.)  Plaintiff is an active member of the Ramapough Nation and is involved in the tribe's affairs.  (Id.)  Plaintiff alleges that the phrase "Hillburn Community" is a euphemism for the derogatory term "Jackson Whites," used to refer to members of the Ramapough Nation.  (Id. ¶ 12A.)

On or about June 10, 2006, Dunlap, who is the principal managing officer of AFS, called Plaintiff and suggested that Plaintiff not return to AFS.  (Id. ¶ 12.)  Dunlap told Plaintiff that the Police Department had called him and made comments regarding the Hillburn community and that, because of these comments, "it would be best if [Plaintiff] did not return to the school." (Id.)  These comments included: that the Hillburn community was "racially mixed and suspect," that members of the community had "communication problems with the Ramapo Police," and that Hillburn community members had "curious, even bizarre racial characteristics."  (Id.)  In the next week, Plaintiff and Dunlap had several more telephone conversations in which Dunlap restated these comments and maintained that Plaintiff should not return to AFS.  (Id.)  In one of these conversations, Dunlap named two to three officers (identified as John Does #1, #2, and #3 in Plaintiff's Second Amended Complaint) as the source of the comments about Plaintiff.  (Id.)

### b.  Concerning Defendants Police Chief Brower and Town of Ramapo

On June 15, 2007, following an incident involving Plaintiff and Defendant Officer Pascocello (described in Section III infra), the Plaintiff attempted to issue a verbal complaint, by telephone, against Officer Pascocello.  (Sec. Am. Compl. ¶ 19.)  However, the officer on the telephone, Sergeant DeMaio (who is not a named defendant in this action), refused to take down

the complaint.  (Id.)  Such a refusal to enter a verbal complaint into record is allegedly against the Ramapo Police Department General Order 202.4(1)(A).[3]  (Id.)

The next day, Saturday, June 16, 2007, the Plaintiff filed a written complaint regarding his encounter with Officer Pascocello, this time in person at the Ramapo Police Headquarters. (Id. ¶ 20.)  However, Plaintiff was allegedly refused a copy of his written complaint and has been refused a copy the several times he has returned and asked for one.  (Id. ¶¶ 20, 21.)  Furthermore, Plaintiff has allegedly made numerous verbal complaints to Police Chief Brower regarding racial harassment suffered by men in the Ramapough community at the hands of Ramapo police officers.  (Id. ¶ 25.)

In the Spring of 2006, there was a public meeting held at the Ramapough Nation Lodge to address issues surrounding the alleged murder of a member of the community by New Jersey park police.  (Id. ¶ 23.)  Police Chief Brower and Ramapo Supervisor St. Lawrence (who is not a named defendant in this action) were present.  (Id.)  Plaintiff rose at this meeting and addressed Chief Brower and Supervisor St. Lawrence; he complained about the pattern and practice of racial harassment and profiling employed by Ramapo police officers against men in the Ramapough community.  (Id.)

Prior to mid-2006, Police Chief Brower was a captain in the Ramapo Police Department. (Id. ¶ 24.)  In violation of General Order #202,[4] Chief Brower never took action regarding Plaintiff's complaints about the conduct of Ramapo police officers.  (Id. ¶ 26.)

---

[3] Plaintiff's Second Amended Complaint does not allege what General Order 202.4(1)(A) says, and Plaintiff has not provided the Court with a copy or cited to its language.

[4] The Second Amended Complaint does not specify beyond citing to General Order #202, but perhaps Plaintiff meant General Order 202.4(1)(A), cited earlier in the Complaint.  The language of the General Orders has not been provided to the Court.

### III. Relevant Facts for the Purposes of the Motion for Summary Judgment on Count VI

On Friday, June 15, 2007, Plaintiff was sitting in his parked car at an area adjacent to the Fourth Street Bridge in Hillburn. [5]  (Sec. Am. Compl. ¶ 15.)  Officer Pascocello, after hearing "loud popping noises" and "observ[ing] smoke," appeared at the scene to investigate.  (Pasc. Aff. ¶ 2.)  He observed Plaintiff's car and another car with two men standing in front of it; the two cars were parked approximately five feet from each other.  (Id.)  Officer Pascocello approached the two men, who he saw were in possession of fireworks, and confiscated the fireworks.  (Id.)

Officer Pascocello then approached Plaintiff's car and noticed that the car's front license plate was missing.  (Pasc. Aff. ¶ 2.)  Officer Pascocello asked Plaintiff for identification; Plaintiff replied that he did not have any and asked the officer why identification was being requested.  (Id.)  At this point, the officer recognized who Plaintiff was and recalled that Plaintiff had been arrested in the past for assaulting a police officer.  (Id.)  Officer Pascocello subsequently asked Plaintiff exit to his truck.  (Id.)  As Plaintiff exited the vehicle, Officer Pascocello "noticed that the front of [Plaintiff's] shorts was bunched up in the area of where pockets would be."  (Id.)  The officer then conducted a "pat-down" procedure on the exterior of Plaintiff's shorts.  (Pasc. Aff. ¶ 3.)

After this encounter with Plaintiff, Officer Pascocello resumed his conversation with the two men in possession of fireworks.  (Pasc. Aff. ¶ 4.)  The men agreed to stop lighting the fireworks and, so, the officer decided not to issue any summonses in the matter.  (Id.)

---

[5] This area has allegedly been designated by the Hillburn Mayor and Trustees as an appropriate spot for village residents—including members of the Ramapough Nation—to congregate and socialize.  (Sec. Am. Compl. ¶ 12.)

**LEGAL STANDARDS**

### I. Motion to Dismiss: III, IV, V, VII and VIII

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court's role is to determine whether the pleadings are legally sufficient. Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 48 (1957)). The district court must generally accept the factual allegations of the pleadings as true and draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

The district court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (disregarding petitioners' allegation that they were denied a minimally adequate education because "no actual facts" were alleged in support of the assertion). As the Supreme Court clarified in Twombly, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. The pleading standard is one of plausibility: the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," id. at 1974; if the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id.; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the Court [in Twombly] is not requiring a universal standard of heightened

fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

## II. Motion for Summary Judgment: Count VI

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005) (internal citations omitted).  However, the party opposing summary judgment "must 'demonstrate more than some metaphysical doubt as to the material facts' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).  Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

## DISCUSSION

## I. Count III: Plaintiff's 42 U.S.C. § 1981 Claim

Plaintiff's third cause of action is brought against Defendants Dunlap and John Doe Officers for allegedly impairing Plaintiff's ability to compel performance of a contract with AFS

to receive its services "for reasons that were racially based."  (Sec. Am. Compl. ¶¶ 34-35.)
Defendants assert that this claim must fail because there is no allegation of any contractual
relationship whatsoever.

### a. Applicable Law

Section 1981 of Chapter 42 of the United States Code prohibits race discrimination in the
making and enforcement of contracts.  See McDonald v. Santa Fe Trail Transp. Co., 427 U.S.
273, 295 (1976).  Section 1981 regulates private conduct as well as governmental action.
Runyon v. McCrary, 427 U.S. 160, 170 (1976).  Though the Supreme Court had originally
restricted the application of Section 1981 to claims arising out of the *formation* of the contract,
Patterson v. McLean Credit Union, 491 U.S. 164 (1989), the Civil Rights Act of 1991
legislatively overruled this limitation, providing that the clause "to make and enforce contracts"
in Section 1981 "includes the making, performance, modification and termination of contracts,
and the enjoyment of all benefits, privileges, terms, and conditions of the contractual
relationship."  42 U.S.C. § 1981(b) (2006).

To state a claim under Section 1981 for impairment of a contract, a plaintiff must allege
that: (1) there was an existing or proposed contractual relationship under which the plaintiff has
or would have rights, Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006); (2) the
defendants intentionally discriminated against plaintiff on the basis of race,[6] see General
Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389 (1982) (holding that Section
1981 "can be violated only by purposeful discrimination"); and (3) this discrimination "block[ed]
the creation of a contractual relationship" or "impair[ed] an existing contractual relationship,"
Domino's, 546 U.S. at 476.

_____

[6] The statute's prohibition against racial discrimination encompasses discrimination based on ancestry or
ethnic characteristics.  See Saint Francis College v. Al- Khazraji, 481 U.S. 604, 613 (1987); Shaare Tefila
Congregation v. Cobb, 481 U.S. 615 (1987).

**b.  Analysis**

Here, Plaintiff has pled each of the elements necessary to state a claim under Section

1981.  First, Plaintiff alleges that he entered a contract or contractual relationship with AFS when

he enrolled there to receive training in fighting and the martial arts.  (Sec. Am. Compl. ¶ 10.)

Plaintiff's alleged conversation with Dunlap, wherein Dunlap told Plaintiff not to return to AFS,

implies that Plaintiff had already been attending and receiving services from AFS and that

Plaintiff had an established relationship with the school.

Second, Plaintiff alleges that Defendants Dunlap advised him that he was telling Plaintiff

not to return based on negative comments about his Native American race, his membership in the

"Hillburn community," a Native American community, and the Native American people of the

Ramapough Nation.  (Id. ¶¶ 12, 34.)  These negative comments referred to the Native American

community's racial characteristics and racially stereotypical behavior.  Accepting the Plaintiff's

factual allegations regarding the conversation between Dunlap and John Doe Officers as true,

Plaintiff's exclusion from AFS was based on the Defendants' purposeful discrimination against

Plaintiff based on his race.

Finally, Plaintiff has alleged impairment of his contract in that he was entirely excluded

from the school and his right to receive the training it offered was terminated.  Therefore,

Plaintiff has stated a claim under 42 U.S.C. § 1981 for which relief may be granted and

Defendants' motion to dismiss Count III of the Second Amended Complaint is denied.

## II.  Count IV: Plaintiff's 42 U.S.C. § 2000 Claim

Plaintiff alleges that Defendant AFS violated 42 U.S.C. § 2000(a) by barring Plaintiff

from a place of public accommodation on the basis of his race.  (Sec. Am. Compl. ¶ 36-37.)

Defendants assert that Plaintiff fails to adequately allege that AFS is a "place of public accommodation" covered by the statute.

### a. Applicable Law

Section 2000(a) of Chapter 42 of the United States Code provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the grounds of race . . . ."   42 U.S.C. § 2000(a) (2006).  The statute further specifies what is meant by "place of public accommodation," stating:

> Each of the following establishments which serves the public is a place of public accommodation . . . if its operations affect commerce, or if discrimination or segregation by it is supported by State action: (1) any . . . establishment which provides lodging to transient guests [provided it is located within a building with more than five rooms]; (2) any . . . facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station; (3) any . . . place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000 (b) (1)-(4) (2006).

### b. Analysis

Plaintiff has failed to state a claim under 42 U.S.C. § 2000 upon which relief can be granted.  The Second Amended Complaint only makes the conclusory allegation that AFS is a place of public accommodation.  (Sec. Am. Compl. ¶ 8.)  It does not provide further facts that demonstrate why or how AFS falls under one of the categories of public accommodation enumerated in the statute and, therefore, does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1974 (2007).

Plaintiff does not allege any specific facts regarding AFS that would place AFS into a Section 2000 category, such as an allegation that AFS has a snack bar on the premises or that there is a place of entertainment (i.e. a swimming pool) in the AFS building.  In his Second Amended Complaint, Plaintiff refers to AFS as a "business" (Sec. Am. Compl. ¶ 8.) and to those who partake in its services as its "clientele" (Id. ¶ 9.)  In fact, individuals must be "enrolled" at AFS to receive its services (Id. ¶ 10.)  These allegations suggest that AFS is not an establishment "open to the public," but a "private club or establishment" to which Section 2000 does not apply. 42 U.S.C. § 2000(e) ("The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b) of this section.").  To survive a motion to dismiss, a pleading must do more than assert a "formulaic recitation of the elements of a cause of action" or set forth "labels and conclusions." Twombly, 127 S. Ct. at 1965.  The Plaintiff has not met that standard and has, therefore, failed to state a claim under 42 U.S.C. § 2000 upon which relief may be granted.

### III. Count V: Plaintiff's Ancillary Claim Under N.J.S.A. 10:5-4

Plaintiff alleges that Defendant AFS violated N.J.S.A. 10:5-4, et. seq., which is New Jersey's "public accommodation" law, by barring Plaintiff from a place of public accommodation on the basis of his race.  (Sec. Am. Compl. ¶¶ 38-39.)

#### a. Applicable Law

N.J.S.A. 10:5-4 provides that "All persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race . . . ."  N.J.S.A. 10:5-4.  New Jersey's statutory definition of "place of public accommodation" has been recognized as

"extremely broad" and non-exhaustive. Boy Scouts of America v. Dale, 530 U.S. 640, 657-58 (2000); Thomas v. County of Camden, 902 A.2d 327, 331-32 (N.J. Super. A.D. 2006). The statute states that "a place of public accommodation shall include, but not be limited to" a list of over 50 types of premises. N.J.S.A. 10:5-5(*l*). One type of premises included within N.J.S.A. 10:5-5(*l*) is "any producer, manufacturer, wholesaler, distributor, retail, shop, store, establishment, or concession dealing with goods or services of any kind." Id.

Courts have found that the degree of public solicitation engaged in by the place of accommodation is of significance under N.J.S.A. 10:5-4. In fact, "broad public solicitation" has been held to be a "principal characteristic" of a place of public accommodation under the statute. Thomas, 902 A.2d at 332. Overall, the public accommodation inquiry employed by the courts focuses on whether the place in question "'engages in broad public solicitation . . . maintains close relationships with the government or other public accommodations or . . . is similar to enumerated or other previously recognized public accommodations.'" Thomas, 902 A.2d at 332, quoting Ellison v. Creative Learning Ctr., 383 N.J. Super. 581, 588 (App. Div. 2006).

### b.  Analysis

In his Second Amended Complaint, Plaintiff claims that AFS—which is engaged in the business of training individuals in martial arts for competitive fighting events—is a place of public accommodation within the meaning of N.J.S.A. 10:5-4 (Sec. Am. Compl. ¶ 8, ¶ 36). As detailed above, the New Jersey statute N.J.S.A. 10:5-4 is interpreted more broadly than its federal counterpart, 42 U.S.C. § 2000. While the federal statute names only four categories of premises which qualify as places of public accommodation, and limits its scope to only those places falling under one of these categories, N.J.S.A 10:5-4 has an expansive, non-exhaustive list

of over 50 places of public accommodation.  AFS, a place that offers the service of training in martial arts, can be considered an "establishment . . . dealing with goods or services" and thus falls under one of the enumerated places of public accommodation under N.J.S.A. 10:5-5(*l*).

Furthermore, Plaintiff asserts that AFS advertises on the internet and "draws its clientele from a market area that encompasses portions of both NY and NJ." (Sec. Am. Compl. ¶ 9.)  Such internet solicitation may be considered the type of "broad public solicitation" that courts have recognized as the essential characteristic of a place of public accommodation.  See Thomas, 902 A.2d at 332.  Therefore, AFS would be a place of public accommodation under N.J.S.A. 10:5-4 in that it fits one of the statute's enumerated categories, or is sufficiently similar to an enumerated category, and that it engages in the kind of "broad public solicitation" characteristic of places of public accommodation.  Ultimately, Plaintiff has set forth adequate factual allegations to support a claim of discrimination under N.J.S.A. 10:5-4.

### IV.  Count VI: Plaintiff's 42 U.S.C. § 1983 Individual Liability Claim

Plaintiff alleges that Defendant Officer Pascocello, an officer and employee of Ramapo, seized and searched Plaintiff without probable cause and in bad faith.  (Sec. Am. Compl. ¶ 41.) Plaintiff further alleges that, in doing so, Officer Pascocello, acting under color of state law, deprived Plaintiff of his constitutional right under the Fourth Amendment to be free of unreasonable search and seizure.[7]  (Id. ¶ 43.)  The Court converts Defendants' motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56.

---

[7] Plaintiff also alleges that Officer Pascocello's actions violated his Fourteenth Amendment right to substantive due process.  (Sec. Am. Compl. ¶ 43.)  However, the Supreme Court has expressly held that whenever "an explicit textual source of constitutional protection" addresses particular behavior, courts must rely on that more explicit source of protection to analyze the claim, rather than the amorphous and open-ended concept of Fourteenth Amendment substantive due process.  Albright v. Oliver, 510 U.S. 266, 273 (1994) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)); accord County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).  Therefore, the court will only analyze Plaintiff's claim under the Fourth Amendment, which protects against the type of unreasonable search and seizure which Plaintiff claims Pascocello subjected him to, and not the Fourteenth Amendment.

### a.   Applicable Law

To establish a prima facie case under 42 U.S.C. § 1983,[8] Plaintiff must allege two elements: (1) the action occurred "under color of law" and (2) the action is a deprivation of a constitutional right or a federal statutory right.  Parratt v. Taylor, 451 U.S. 527, 535 (1981). Here, because Plaintiff brings this claim against a police officer, a governmental employee, for conduct pursuant to his governmental duties and powers, and therefore the alleged action occurred under color of law.  See Tennessee v. Garner, 471 U.S. 1, 5-7 (1985) (police officer and city were sued for use of deadly force).  The second issue is whether the Plaintiff has alleged a constitutional deprivation.  The Supreme Court has found that if there is no constitutional violation, there can be no liability, either on the part of the individual officer or the government body.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original).

Plaintiff alleges Officer Pascocello performed a "stop and frisk" procedure on him without probable cause, thereby violating the Fourth Amendment ban on unreasonable searches and seizures.  (Sec. Am. Compl. ¶ 43.)  However, in Terry v. Ohio, the Supreme Court "carved out an exception to the general rule requiring probable cause for a search, permitting an investigating officer to briefly detain an individual for questioning."  U.S. v. Vargas, 369 F.3d 98, 101 (2d Cir. 2004) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).  Under the Terry test, an officer may perform a "stop and frisk" procedure without violating constitutional protections as

---

[8] 42 U.S.C. § 1983 states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

long as two conditions are met: (1) "the investigatory stop must be lawful . . . [a] requirement []

met in an on-the-street encounter . . . when the police officer reasonably suspects that the person

apprehended is committing or has committed a criminal offense"; (2) "to proceed from a stop to

a frisk, the police officer must reasonably suspect that the person stopped is armed and

dangerous."  AZ v. Johnson, 129 S.Ct. 781, 784 (2009) (citing Terry, 392 U.S. at 30-31).  See

also United States v. Colon, 250 F.3d 130, 134 (2d Cir. 2001) (an officer may briefly detain an

individual "if the officer has a reasonable suspicion that criminal activity may be afoot")

(internal quotation marks omitted).

 **b.  Analysis**

  Whether Officer Pascocello's temporary detention (his stop) of Plaintiff was legal turns

on whether the officer reasonably suspected that Plaintiff was committing or had committed a

crime.  When first approaching Plaintiff's vehicle, Officer Pascocello observed that Plaintiff was

in violation of § 402 of New York Vehicle and Traffic Law because his vehicle did not have a

front license plate.[9]  (Pasc. Aff. ¶ 2.)  Plaintiff, in his Affidavit in Opposition to the Motion to

Dismiss, admits that his vehicle did not have a front license plate.  (Plaintiff Aff. ¶ 4.)  The

Supreme Court has held that a temporary detention is lawful, and the first Terry requirement is

met, "whenever it is lawful for police to detain an automobile and its occupants pending inquiry

into a vehicular violation."  AZ v. Johnson, 129 S.Ct. 781, 784 (2009).  The officer need not

believe, in addition, that the individual(s) within the vehicle are involved in criminal activity.  Id.

Therefore, Officer Pascocello—after observing that Plaintiff had violated New York Vehicle and

Traffic law—lawfully conducted an investigatory stop of Plaintiff in asking Plaintiff to exit his

vehicle.  See Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle

---

[9] § 402(1) states, in relevant part: "No person shall operate, drive or park a motor vehicle on the public
highways of this state unless such vehicle shall have . . . a set of number plates . . . one on the front and one on the
rear of such vehicle . . . ."

has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment[] . . . .").

The second <u>Terry</u> condition, which governs whether Officer Pascocello could legally subject Plaintiff to a frisk, requires that Officer Pascocello have reasonably suspected that Plaintiff was armed and dangerous.  The standard for this requirement is whether "the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate."  <u>Terry</u>, 392 U.S. at 21-22.  When Plaintiff was exiting his vehicle, Officer Pascocello noticed that Plaintiff's pants were bunched up in a suspicious manner at the area where the pocket should be.  (Pasc. Aff. ¶ 2.)  Plaintiff does not deny that his pants were bunched in this way; in fact, Plaintiff makes no mention of this allegation in his response Affidavit.  Furthermore, the Court has recognized that traffic stops are "especially fraught with danger to police officers," <u>Michigan v. Long</u>, 463 U.S. 1032, 1047 (1983), and that the overall risk of harm is minimized "if the officers routinely exercise unquestioned command of the situation."  <u>Maryland v. Wilson</u>, 519 U.S. 408, 414 (1997) (quoting <u>Michigan v. Summers</u>, 452 U.S. 692, 702-703 (1981)); <u>see</u> <u>Brendlin v. California</u>, 551 U.S. 249, 258 (2007).  Officer Pascocello was, therefore, practicing "reasonable caution" in conducting the pat down procedure on Plaintiff after observing Plaintiff's pants bunched in a suspicious manner.  <u>See</u>, <u>e.g.</u>, <u>Mimms</u>, 434 U.S. at 334 (holding that search was proper where officer observed bulge in driver's jacket, even though officer had no reason to suspect foul play from driver).

Plaintiff has failed to come forward with specific facts which show that a genuine issue of material fact exists as required by Federal Rule of Civil Procedure 56.  Plaintiff does not deny that his vehicle was missing a front license plate, in violation of New York traffic law.  Thus,

Officer Pascocello's stop of Plaintiff was legal.  Further, Plaintiff does not deny that his pants were bunched in a suspicious manner as he exited his vehicle, thereby giving Officer Pascocello a reason to exercise caution and conduct a frisk of Plaintiff.  Ultimately, Plaintiff fails to show in his Second Amended Complaint and his responding Affidavit that there is a genuine issue as to any material fact with respect to his claim against Officer Pascocello under § 1983; the moving party is entitled to judgment as a matter of law.

### V.   Count VII: Plaintiff's 42 U.S.C. § 1983 Municipal Liability Claim

Plaintiff alleges that Defendants Town of Ramapo and Brower created a pattern and practice of not documenting citizen complaints, not investigating citizen complaints, not documenting the results of citizen complaints when they are investigated, and not disciplining officers for harassment of Plaintiff and other members of the Ramapough Nation.  (Sec. Am. Compl. ¶¶ 51, 52.)  Both Defendants, according to Plaintiff, did this with knowledge (both constructive and actual) that it was occurring and with deliberate indifference to the rights of citizens and members of the Ramapough Nation.  (Id.)  Plaintiff asserts that Defendant Brower acted with gross negligence, knowing that the officers of the Town of Ramapo would feel empowered to ignore the rights of citizens.  (Id. ¶ 51.)

### a.   Applicable Law

In Monell v. Department of Social Services, the Supreme Court held that local governments may be liable for damages, as well as declaratory and injunctive relief, whenever "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690-691 (1978).[10]  Monell declares that a local government may be liable not only

---

[10] Monell rejects government liability based on the doctrine of *respondeat superior*.  Thus, a government body cannot be held liable under § 1983 merely because it employs a tortfeasor.  Monell, 436 U.S. at 691-692.

for its official policy, but for its custom as well.  Id. (holding municipal liability exists for constitutional deprivations resulting from "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels").

Further, a city may be liable for failure to train, supervise, or discipline its employees. City of Canton v. Harris, 489 U.S. 378, 387 (1989) (rejecting city's contention that municipal liability lies only where challenged policy is itself unconstitutional and recognizing  failure to train as basis for Section 1983 liability); Russo v. City of Bridgeport, 479 F.3d 196, 212 (2d Cir. 2007).  However, municipal liability based on a policy of inadequate training can not be derived from a single incident of misconduct by a non-policy-making municipal employee.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 813 (1985); Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).  The Supreme Court has further held that a municipality may be liable for a failure to train "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton, 489 U.S. at 388; Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007).  This deliberate indifference level of culpability is required in order to show that the municipal policy was the "moving force" behind the constitutional violation.  Id. at 388 n.8.

The Second Circuit has identified three requirements for meeting the deliberate indifference standard so as to give rise to municipal liability in a failure to train claim.  To establish deliberate indifference to his constitutional rights, Plaintiff must allege that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation," Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992) (quoting City of Canton, 489 U.S. at 390 n.10); (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees

mishandling the situation," Id.; (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  Id.

Plaintiff must first and foremost allege that his constitutional rights were violated as a result of a municipal policy or custom.  Section 1983 "only gives a remedy" when the plaintiff demonstrates a violation of a right protected by the federal Constitution (or by a federal statute).  Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001) ("[A] municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights.").

### b.  Analysis

As discussed in Part I, supra in Count III, Plaintiff has adequately alleged deprivation of his statutory rights under 42 U.S.C. § 1981 by individual John Doe Officers.  However, Plaintiff has not adequately alleged that such a deprivation can be attributed to Police Chief Brower and Town of Ramapo as part of a pattern or practice of harassment due to a failure to train John Doe Officers.  Under a failure to train theory, Plaintiff must allege facts that render plausible the three elements of such a claim.  That is, Plaintiff must have alleged first that Defendants knew, to a moral certainty, that Ramapo police officers would be presented with opportunities to interfere with citizens' contractual rights.  See Walker, 974 F.2d at 297.  The complaint lacks specific factual allegations regarding Defendant Brower and Town of Ramapo's knowledge that Ramapo police officers would be presented with such opportunities.  Plaintiff only alleges that he submitted numerous complaints regarding officers' general behavior, not specifically regarding interference with citizens' right to contract, and that these general complaints were not handled in the manner promulgated by a Ramapo General Order.  (Sec. Am. Compl. ¶ 51.)

Second, Plaintiff must have alleged that proper training or supervision on Defendants' part would have caused the police officers to behave in a way that prevents such an interference. Plaintiff fails to make such an allegation.[11]  As it stands, Plaintiff's complaint alleges the sort of "single incident" of alleged misconduct involving "only actors below the policy-making level" and non-specific other behavior that is insufficient to support a municipal liability claim.  City of Canton v. Harris, 489 U.S. 378, 387 (1989); see also Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (1991).

Plaintiff has failed to plead sufficient factual allegations to render this claim plausible. Plaintiff only alleges that Defendants Brower and Town of Ramapo "created a pattern and practice" of not handling citizen complaints in the manner promulgated by a Ramapo General Order.   Such an allegation is unrelated to Plaintiff's § 1981 claim of interference with a contract due to racial discrimination.  To assert a claim for municipal liability, there must be a causal connection between the municipal policy or custom (of mishandling citizen complaints) and the deprivation of Plaintiff's rights under § 1981.  See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004); see also Dominguez v.. Beame, 603 F.2d 337, 341 (2d Cir. 1979). Because Plaintiff's Second Amended Complaint has failed to plead such a causal connection, Defendants Brower and Town of Ramapo's motion to dismiss Count VII is granted.

---

[11] The Second Circuit has found that "[w]here the proper [constitutional] response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." Walker v. City of New York, 974 F.2d 293, 299-300 (2d Cir. 1992).  However, though it may be reasonable for municipal policymakers to assume their employees possess and employ common sense, "where there is a *history of conduct* rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." Id. at 300 (emphasis added).  Therefore, a plaintiff could allege "that policymakers were aware of a pattern . . . [of contract interference] by police officers but failed to institute appropriate training or supervision" in order to survive a motion to dismiss. Id. Here, Plaintiff alleges that the Town of Ramapo Defendants knew of a "history of antagonism" between Ramapo police officers and the Hillburn Community in general and Plaintiff in particular. (Sec. Am. Compl. ¶ 53.)  However, the Second Amended Complaint fails to plead specific facts demonstrating Defendants' knowledge of a history of contractual interference based on race.  Moreover, there are no allegations as to how Defendants Brower and Ramapo acquired knowledge of a history of conduct, either constructively or actually.

### VI.   Count VIII: Plaintiff's First Amendment Retaliation Claim

Plaintiff alleges that Defendants Town of Ramapo and Police Chief Brower acted in retaliation for Plaintiff's public criticism of the Ramapo Police Department and accusations of discrimination against police officers.  (Sec. Am. Compl. ¶ 47.)  Such retaliatory conduct amounted to discrimination against Plaintiff on the basis of his race and chilled his First Amendment Rights.  (Id. ¶ 48.)

### a.   Applicable Law

To establish a prima facie First Amendment retaliation claim, Plaintiff must plead: "(1) that the speech or conduct at issue was protected, (2) that the Defendant took adverse action against the Plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)).  Further, with respect to the third element, the Plaintiff must allege that "his First Amendment rights were actually chilled."  Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (internal quotation marks omitted).  Specifically, law enforcement activities designed to retaliate against persons for criticizing government officials have been held to violate the First Amendment.  Hartman v. Moore, 547 U.S. 250, 256 (2006).

### b.   Analysis

Under this claim, Plaintiff's only relevant factual allegations are: (a) that he made several verbal complaints to Defendant Brower regarding the racial harassment by Ramapo police officers against men in the Ramapough community, including Plaintiff[12] (Sec. Am. Compl. ¶ 25); and (b) that, at a public meeting held at the Ramapough Nation Lodge in the Spring of 2006, Plaintiff addressed Defendant Brower (and a Ramapo Supervisor), complaining of the "pattern

---

[12] The Second Amended Complaint does not specify when these verbal complaints were made.

and practice of racial harassment and profiling against the men of the Ramapough community"
by the Police Department.  (Sec. Am. Compl. ¶ 23.)

Plaintiff's public criticism of the Ramapo Police Department is speech traditionally
protected under the First Amendment.  See New York Times Co. v. Sullivan, 376 U.S. 254, 270
(1964) ("[D]ebate on public issues should be uninhibited, robust, and wide-open, and that [] may
well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and
public officials").  Plaintiff further alleges that the Town of Ramapo Defendants took adverse
action against him, which is the second element of a First Amendment retaliation claim.  These
actions included the discriminatory remarks made by John Doe Officers in violation of Section
1981, the allegedly unconstitutional "stop and frisk" of Plaintiff by Officer Pascocello, and the
failure of Police Chief Brower to record and/or pursue Plaintiff's complaints against Ramapo
police officers.

However, Plaintiff does not allege sufficient facts to satisfy the final element of a First
Amendment retaliation claim: facts supporting a causal connection between his public criticism
at the meeting in the Lodge and the aforementioned adverse actions.  Nor does Plaintiff allege
that his speech was actually *chilled*.  Plaintiff merely asserts a factual conclusion—that
Defendants' actions were in retaliation to his public complaints.  Plaintiff offers no further
factual allegations to "amplify" this claim so as to raise a right to relief above the speculative
level."  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965 (2007).  As such, Plaintiff has failed to
state a First Amendment retaliation claim upon which relief may be granted, and accordingly,
Defendants Brower and Town of Ramapo's motion to dismiss is granted.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss counts IV, VII, and VIII are granted, and their motions to dismiss counts III and V are denied. Defendant Pascocello's motion for summary judgment on count VI is granted in its entirety.

Since counts I and II have been withdrawn, the relevant parties will proceed to trial on counts III and V. Discovery will end on May 15, 2009. A Pre-trial Order will be filed on May 29, 2009, and trial will be held on June 15, 2009 at 9:30 a.m.


IT IS SO ORDERED.

Dated: New York, New York
      March 12, 2009

                                    Robert P. Patterson, Jr.
                                          U.S.D.J.

24